E-FILED on    6/2/10

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ROCKY RYAN HUNT,<br><br>　　　　　Petitioner,<br><br>　　v.<br><br>A.A. LAMARQUE, Warden,<br><br>　　　　　Respondent. | No. C-04-03925 RMW<br><br>ORDER GRANTING IN PART AND DENYING IN PART MOTION TO AMEND PETITION<br><br>**[Re Docket No. 30]** |

　　　The court previously stayed petitioner Rocky Ryan Hunt's case to permit him to exhaust certain claims in state court. Petitioner now moves for leave to amend his petition to assert additional claims that have recently been exhausted. Respondent opposes on the ground that the new claims are time-barred. For the reasons set forth below, the court grants in part and denies in part petitioner's motion to amend.

## I. BACKGROUND

　　　On May 7, 1998, petitioner, after drinking heavily, got into a fight with the victim, Frank Paul. Paul fell to the ground, after which petitioner continued beating him. The police found Paul alongside a nearby creek. Paul was hospitalized but died from his injuries. Petitioner was charged

with Paul's murder. At his trial, after both sides rested, Justin Coppedge appeared at the courthouse and offered to testify that he saw other people beating Paul after petitioner left. The trial judge denied petitioner's motion to reopen the case, stating that "this case is two and a half years old" and finding the motion "untimely." A jury found petitioner guilty of first degree murder, and the court sentenced him to twenty-five years to life in prison. The California Court of Appeal denied petitioner's appeal and his petition for a writ of habeas corpus. The California Supreme Court denied petitioner's application for discretionary review as well as his habeas petition on September 17, 2003. On September 17, 2004, petitioner filed a habeas petition in this court, and the court ordered the respondent to show cause on January 17, 2006. Respondent submitted a response on May 4, 2006. Petitioner thereafter requested a stay of proceedings, in order to exhaust additional state claims, which the court granted.

    Petitioner now moves to file an amended petition that includes eight new claims in addition to the two originally-filed claims. The claims are as follows:

    **Original Claim One**: The trial court deprived petitioner of due process and the right to call witnesses on his behalf by refusing to reopen the case to allow Coppedge to testify.

    **Original Claim Two**: Petitioner was deprived of effective assistance of counsel when his attorney failed to place Coppedge's testimony on the record or to include specific evidence from Coppedge in the motion for a new trial.

    **New Claim Three**: New testimony from Sheresie Dyer, a witness who testified in his trial, raises substantial doubt about petitioner's guilt, thereby undermining the fairness of his trial.

    **New Claim Four**: The trial court violated petitioner's right to due process and a fair trial by failing to instruct the jury on superseding causation.

    **New Claim Five**: Petitioner was deprived of effective assistance of counsel when petitioner's counsel did not present an adequate causation defense by failing to argue that other people contributed to the victim's death.

    **New Claim Six**: Petitioner was deprived of effective assistance of counsel when petitioner's counsel failed to test possibly exculpatory physical evidence obtained from Felipe Duenas.

**New Claim Seven**: Petitioner was deprived of effective assistance of counsel when petitioner's counsel did not request a jury instruction on superseding cause.

**New Claim Eight**: Petitioner's right to testify on his own behalf was violated when petitioner's counsel did not advise him of his right to testify.

**New Claim Nine**: Petitioner was deprived of effective assistance of counsel when petitioner's counsel did not advise him of his right to testify, did not have petitioner testify at trial, and did not place petitioner's desire to testify on the record.

**New Claim Ten**: The District Attorney violated petitioner's due process rights by failing to disclose potentially exculpatory evidence collected from Felipe Duenas.

## II. ANALYSIS

### A.  Relation Back

Respondent argues that all of the new claims except for a sub-claim within new claim five do not relate back and should therefore be denied based on the one-year statute of limitations imposed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").

#### 1.  Legal Standard

The AEDPA imposes a one-year time limit to bring a federal habeas corpus claim. 28 U.S.C. § 2244(d). Typically, the limitation period begins running from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." *Id.* "Direct review" includes the period within which a petitioner can file a petition for a writ of certiorari from the United States Supreme Court, whether or not the petitioner actually files such a petition. *Bowen v. Roe*, 188 F.3d 1157, 1159 (9th Cir. 1999). Thus, the state court judgment against petitioner became final on December 16, 2003, ninety days after the California Supreme Court denied his petition for discretionary review, giving petitioner until December 16, 2004 to file his federal habeas claims.

Petitioner filed his original habeas petition with only two claims on September 17, 2004. He now seeks to amend his petition to add eight new claims. Federal Rule of Civil Procedure 15, made applicable to habeas proceedings by 28 U.S.C. § 2242, allows petitioners to amend a petition with leave of the court at any time during a proceeding. *Mayle v. Felix*, 545 U.S. 644, 654 (2005).

1  However, amendments made after the AEDPA's one-year statute of limitations has run relate back to
2  the date of the original pleading only if the original and amended pleadings arise out of the same
3  "conduct, transaction, or occurrence." *Id.* at 655 (quoting Fed. R. Civ. P. 15(c)(2)).  "An amended
4  habeas petition . . . does not relate back (and thereby escape AEDPA's one-year time limit) when it
5  asserts a new ground for relief supported by facts that differ in both time and type from those the
6  original pleading set forth." *Id.* at 650.  Rather, relation back requires that "the original and
7  amended petitions state claims that are tied to a common core of operative facts." *Id.* at 664.

8        In *Mayle*, petitioner Felix originally alleged a Sixth Amendment Confrontation Clause
9  violation based on the admission into evidence of a witness's videotaped testimony. *Id.* at 648-49.
10 After the AEDPA's one-year time limit had passed, Felix sought to add a new claim that his Fifth
11 Amendment rights against self incrimination were violated during his pretrial interrogation by
12 police. *Id.* Applying the "time and type" test, the Supreme Court determined that Felix's own
13 pretrial statements were different in time and type from a witness's videotaped testimony, and thus
14 his new claim did not relate back. *Id.* at 657.  The Court rejected Felix's argument that the relevant
15 "transaction or occurrence" for relating back amended claims was his trial and conviction, pointing
16 to Congress's desire to "advance the finality of criminal convictions" when it enacted the AEDPA.
17 *Id.* at 662.  If new claims could be added so long as they arose out of the trial or conviction, the
18 AEDPA time limit would be almost meaningless. *Id.*

19       The Ninth Circuit applied *Mayle* in *Hebner v. McGrath*, 543 F.3d 1133 (9th Cir. 2008),
20 decided after the present motion was filed.  Petitioner Hebner originally alleged a violation of due
21 process and equal protection based on the admission of propensity evidence in the form of testimony
22 regarding an unrelated, uncharged sexual offense. *Hebner*, 543 F.3d at 1135-36.  The trial court had
23 instructed the jury that (1) if they found Hebner had committed the uncharged sexual offense, they
24 could infer that he had also committed the charged sexual offenses, and (2) they could find Hebner
25 committed the uncharged sexual offense based on a preponderance of the evidence. *Id.* at 1135.
26 Hebner sought to amend his petition to claim that the trial court's jury instruction was also a due
27 process violation. *Id.* at 1136.  The court found that the new claim did not relate back because
28 "Hebner's original claim related to the evidence admitted at trial, while his later claim was directed

at the jury instructions given by the trial court." *Id.* at 1138. The court noted that although Hebner had referred to the preponderance of the evidence standard in his original petition:

> he did so only to further his argument that the admission of [evidence of the uncharged offense] could have led the jury to find him guilty because they wanted to punish him for the [uncharged offense] . . . A complete reading of the initial petition makes clear that Hebner's challenge was to the admission of [the evidence]. The jury instruction itself was not at issue.

*Id.* at 1138.

### 2. Petitioner's Claims

Petitioner's first original claim was based on the trial judge's refusal to reopen the case when presented with new evidence in the form of Coppedge's proffered testimony. The second original claim was based on defense counsel's failure to place Coppedge's testimony on the record or to include his testimony in the motion for a new trial. These claims are narrowly focused on the issue of how the court and his counsel responded to Coppedge's last-minute proffered testimony. Petitioner's new claims are much more expansive, challenging various aspects of the pre-trial and trial process relating to a defense theory that others were involved in beating the victim and contributed to the victim's death. The new claims involve witnesses other than Coppedge, petitioner's own desire to testify at trial, and jury instructions, none of which were a part of the original petition. Thus, the original petition would not have put respondent on notice that such issues were being raised. *See United States v. Hernandez*, 436 F.3d 851, 858 (8th Cir. 2006) ("[t]he rationale of Rule 15(c) is that a party who has been notified of litigation concerning a particular occurrence has been given all the notice that statutes of limitations were intended to provide) (quoting *Mandacina v. United States*, 328 F.3d 995, 1000 (8th Cir. 2003)).

Petitioner argues that *Mayle* shifted the focus from the trial to the underlying incidents and that here, all claims relate to "the superceding causation incident by the fenced area where people other than petitioner harmed the victim and could have caused his death." Reply 2-3. In essence, petitioner argues that all of his claims relate to determining what actually happened on the day of the victim's death, and therefore they all arise out of the same transaction or occurrence. However, just as treating the trial as the relevant occurrence is inappropriate, petitioner's approach "views 'occurrence' at too high a level of generality." *Mayle*, 545 U.S. at 661 (quoting *United States v.*

*Pittman*, 209 F.3d 314, 318 (4th Cir. 2000)). Many of the issues commonly raised in habeas petitions can be cast as relating to a claim of innocence or an attempt to present an alternative series of events leading to the charged crime. Thus, petitioner's approach would not provide a meaningful limitation on amending claims, which *Mayle* clearly intended to impose.

Applying the "time and type" test set forth in *Mayle*, most of the new claims petitioner seeks to bring do not arise out of the same conduct, transaction, or occurrence as the original claims. Petitioner tries to portray the second original claim as a broad ineffective assistance of counsel claim based on defense counsel's overall failure to present a superseding causation defense. However, a complete reading of the original petition makes clear that the original challenge was limited to defense counsel's failure to place Coppedge's testimony on the record or to include his testimony in a motion for a new trial. Thus, only the portion of new claim five that is based on defense counsel's failure to call Coppedge to testify relates back to the original claims.[1]

Petitioner's new claims based on testimony from Sheresie Dyer, physical evidence obtained from Felipe Duenas, and petitioner's desire to testify at trial are different in both time and type from the facts alleged in his original petition. Because they rely upon facts independent of Coppedge's testimony, these claims do not share a common core of operative facts with his original claims. In addition, petitioner's original claims are based entirely on events that happened after both sides had rested in the trial, while these new claims are based on pre-trial and trial conduct. *See Hebner*, 543 F.3d at 1138 (finding claims separated in "time and type" where the amended claim arose from pretrial events and the original claim arose from the trial).

The only new claims arising from conduct occurring after Coppedge's courthouse appearance are petitioner's claims relating to the judge's failure to instruct the jury on superseding causation and defense counsel's failure to request such an instruction. However, petitioner's original claims are based on his contention that Coppedge's testimony should have been admitted. The Ninth Circuit has held that the admission of evidence and jury instructions are "discrete occurrences" and that

---

[1] Respondent concedes that this limited subclaim within new claim five relates back to the original claims.

claims arising out of these separate occurrences "depend upon separate transactions and do not share a common core of operative facts." *Hebner*, 543 F.3d at 1139. Thus, the jury instruction claims do not relate back to the original claims, which dealt with the admission of Coppedge's testimony.

In summary, the only new claim that relates back to the original petition is the portion of claim five that is based on defense counsel's failure to call Coppedge to testify.

**B.     Alternative Bases for Allowing Addition of New Claim Three**

Petitioner's new claim three is that new testimony from Sheresie Dyer, a witness who testified at his trial, raises substantial doubt about petitioner's guilt, thereby undermining the fairness of his trial. In his reply brief, petitioner argues for the first time that the court should permit addition of this new claim even if it does not relate back to the original claims based on either: (1) an alternative triggering date under 28 U.S.C. § 2244(d)(1)(D) or (2) equitable tolling.

**1.     Alternative Triggering Date**

As mentioned above, the AEDPA's one-year limitation period for bringing a federal habeas corpus claim typically runs from "the date on which the [state court] judgment became final by the conclusion of direct review or the expiration of the time for seeking such a review." 28 U.S.C. § 2244(d)(1). However, depending on the individual situation, alternative triggering dates may apply, and the latest of these dates controls. *Id.* If "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence" is later than the date on which the state court judgment became final, then the limitation period begins on that later date. *Id.* at § 2244(d)(1)(D).

Petitioner argues that because he did not discover the facts to support his third claim until May 2006, the limitations period should begin on May 1, 2006. In order for this alternative triggering date to apply, petitioner must establish that he could not have discovered the factual predicate for his third claim through the exercise of due diligence until May 1, 2006. The factual predicate of petitioner's third claim is that Dyer did not testify truthfully at his trial due to fear of police retribution. Petitioner claims that he could not have discovered this fact until Dyer felt that the threat from law enforcement had been lifted. However, petitioner provides no evidence regarding when Dyer perceived that this threat of law enforcement had been lifted. In her

1  declaration, Dyer only states that she had been afraid to tell the truth at the time she was being
2  interviewed by police detectives and when she testified at petitioner's trial. Pet. Ex. 6 ¶¶ 17, 20.
3  Dyer testified as a witness for the prosecution on December 7, 2000. Rep.'s Tr. ("RT") 473.
4  Petitioner provides no evidence suggesting that Dyer continued to feel threatened by law
5  enforcement from the time of his trial in December 2000 until he contacted Dyer in May 2006, nor
6  does he provide any evidence that he exercised due diligence during this period.

7  Dyer testified in December 2000 that during the police interrogations, "I was scared, I was
8  young, and whatever they said or told me to do, I just went on and did it because they were in my
9  face, made me feel like I did something. Like I was scared, like I was going to go to jail." RT 486.
10 Yet petitioner did not try to contact Dyer to seek a recantation until May 2006. The court recognizes
11 that petitioner has been incarcerated and therefore may require the assistance of others in gathering
12 evidence to support his claims. However, petitioner has not stated any facts showing that he had
13 been diligent in attempting to find factual support for his claims. He has not provided any
14 explanation as to why he did not try to contact Dyer, through his attorney or family members, until
15 May 2006, five and a half years after his trial. Therefore, petitioner has failed to establish that May
16 1, 2006 was "the date on which the factual predicate of the claim or claims presented could have
17 discovered through the exercise of due diligence." 28 U.S.C. § 2244(d)(1)(D).

18 In the alternative, petitioner seeks an evidentiary hearing on the issue of whether this
19 alternative triggering date should apply. As discussed above, petitioner has failed to point out any
20 efforts he made to show due diligence on his part between his trial in 2000 and his contacting Dyer
21 in 2006. Given the lack of sufficient allegations of diligence combined with the absence of any
22 evidence that Dyer continued to feel threatened by law enforcement during this long time period, the
23 court finds that petitioner is not entitled to an evidentiary hearing on this issue. *See Roy v. Lampert*,
24 455 F.3d 945, 950 (9th Cir. 2006) (considering whether petitioners "made sufficient allegations of
25 diligence to be entitled to an evidentiary hearing").

26 **2.    Equitable Tolling**

27 Petitioner also argues that the limitations period should be equitably tolled until May 1, 2006
28 because police intimidation prevented Dyer from coming forward with exculpatory testimony.

ORDER GRANTING IN PART AND DENYING IN PART PETITIONER'S MOTION TO FILE FIRST AMENDED PETITION FOR WRIT OF HABEAS CORPUS—No. C-04-03925 RMW
CCL                                                        8

"Generally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005).  Petitioner asserts that government interference was an extraordinary circumstance that made Dyer's exculpatory testimony unavailable to petitioner.  Petitioner has submitted Dyer's declaration as evidence that Dyer was intimidated or threatened by police.  Pet. Ex. 6.  Police coercion that prevents a witness from coming forward with a truthful statement could support a finding of extraordinary circumstances.  However, petitioner has not provided any reason to believe this alleged police coercion continued to intimidate Dyer up until May 2006.  In her declaration, Dyer only states that she had been afraid to tell the truth at the time she was being interviewed by police detectives and when she testified at petitioner's trial in December 2000.  Pet. Ex. 6 ¶¶ 17, 20.  Moreover, as discussed above, petitioner has failed to state any efforts on his part to show that he pursued his rights diligently between his trial in December 2000 and when he contacted Dyer in May 2006.  Therefore, petitioner has failed to establish that the limitations period should be equitably tolled until May 1, 2006.  For the same reasons discussed in the context of the alternative triggering date, the court also finds that petitioner is not entitled to an evidentiary hearing on the issue of equitable tolling.

### C. The *Schlup* Gateway

Petitioner argues that his new claims, even if otherwise barred, should be permitted under the *Schlup* gateway.

#### 1. Legal Standard

In *Schlup v. Delo*, the Supreme Court created an exacting gateway standard that, if met, allows habeas petitioners to overcome procedural obstacles to having the merits of their constitutional claims heard.  513 U.S. 298, 314 (1995).  "Under *Schlup*, a petitioner's otherwise-barred claims may be considered on the merits if his claim of actual innocence is sufficient to bring him within the narrow class of cases implicating a fundamental miscarriage of justice."  *Majoy v. Roe*, 296 F.3d 770, 775 (9th Cir. 2002) (quotations omitted).  To meet the *Schlup* gateway standard, a petitioner must "present[] evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless

constitutional error." *Schlup*, 513 U.S. at 316.  Petitioner must support his claim of actual innocence with "new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial." *Id.* at 324.  This new reliable evidence must establish that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Id.* at 327.  In other words, petitioner must show that "it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Id.*  The court is to make its determination "in light of all the evidence, including that alleged to have been illegally admitted . . . and evidence tenably claimed to have been wrongly excluded or to have become available only after trial." *Id.* at 328.  The court may make credibility assessments if the newly presented evidence calls into question the credibility of witnesses presented at trial. *Id.* at 330.  The court may also "consider how the timing of the submission [of new evidence] and the likely credibility of the affiants bear on the probable reliability of that evidence." *Id.* at 332.

In *Majoy*, the Ninth Circuit found that the exacting *Schlup* gateway standard could potentially be met where the petitioner offered, as evidence of his actual innocence, the recantation by a "self-confessed murderer, arsonist, and robber" who had testified against the petitioner at a preliminary hearing.  296 F.3d at 773-76.  Though there were other facts tending to corroborate the original statement incriminating the petitioner, the court held that, if the recantation were found to be reliable, no reasonable jury would find the remaining circumstantial evidence sufficient to convict petitioner beyond a reasonable doubt. *Id.* at 777.  In light of "[t]he fact-intensive nature of this inquiry [into the reliability of the recantation], together with the District Court's ability to take testimony from the few key witnesses if it deems that course advisable," the Ninth Circuit remanded the case to the district court to determine whether the recantation was credible. *Id.* at 777-78 (quoting *Schlup*, 513 U.S. at 332).

### 2. Dyer and Coppedge Declarations

Petitioner contends that the declarations of Dyer and Coppedge provide new reliable evidence in the form of trustworthy eyewitness accounts, and in light of this new evidence, it is more likely than not that no reasonable juror would have convicted petitioner of first degree murder.  It is

1 undisputed that petitioner beat the victim on the day that the victim died.  Thus, petitioner does not
2 claim that he committed no crime but rather argues that he is actually innocent of first degree murder
3 because there was superseding causation.  According to petitioner, Dyer and Coppedge's
4 declarations show that petitioner left the victim injured but alive, after which others beat the victim
5 and threw him down by the creek.

6       As discussed above, in weighing the reliability of the new evidence, the court may consider
7 the timing of its submission and the likely credibility of the declarants.  *Schlup*, 513 at 332.
8 Moreover, in determining whether the new evidence shows that "a constitutional violation has
9 probably resulted in the conviction of one who is actually innocent," the court must consider all the
10 evidence.  *Id.* at 328.  The court therefore delves into the specific facts of this case and the evidence
11 presented at petitioner's trial.

12       The crime occurred on May 7, 1998.  RT 15.  In a police interview one week later, Dyer
13 testified to seeing petitioner push the victim's body down to the creek, where it was found by the
14 police.  Pet. Ex. 4 at 3-5, 14.  At two preliminary hearings, Dyer again testified to seeing petitioner
15 push the victim's body towards the creek.  Pet. Ex. 5 at 39, 76, 79; Clerk's Tr. ("CT") 182-83.  At
16 petitioner's trial, Dyer claimed lack of memory in response to many questions but stated that her
17 statements to the police and at the preliminary hearings were the truth.  RT 495-524.  Similarly,
18 Trina Robinson, petitioner's girlfriend, told the police and testified at trial that petitioner put the
19 victim "over there in the creek."  RT 632-33.

20       Petitioner's mother, Denise Hunt, repeatedly asserted that people other than her son were
21 involved in the crime.  RT 910.  Petitioner's trial counsel undertook an investigation into whether
22 someone other than petitioner may have been involved in the victim's beating and death but found
23 no evidence of outside involvement.  RT 910-11.  He told the court, "[F]rankly, we have talked to
24 everyone that was willing to talk to us and we have found no independent corroboration from
25 anybody else other than Mr. Hunt being involved."  RT 910.

26       One week after Dyer testified at trial, Denise Hunt told defense counsel that Dyer was
27 prepared to testify that she had lied on the witness stand and that petitioner had not been out by the
28 creek.  RT 911.  However, when asked, Dyer told a defense investigator that she "did not remember

telling Denise Hunt anything to that extent" and that she remembered petitioner being out by the creek. *Id.* After both sides had rested at trial, Denise Hunt told defense counsel that Dyer and Coppedge were prepared to offer new testimony. *Id.* Again, Dyer informed defense counsel that she would not say anything different from her earlier testimony. *Id.* Coppedge told defense counsel for the first time that "there were 18 people out back beating on Frank Paul in the area before he went down to Alamo Creek." RT 912. In three previous tape-recorded statements to the police and in a previous interview with a defense investigator, Coppedge had stated that he had no new information and had implicated petitioner in the crime. *Id.* When asked why he had not provided the police and the defense investigator with this information, Coppedge "professed to have a profound lack of memory as to this until some time now." *Id.*

On October 21, 2002, over four years after the crime and almost two years after the trial, Coppedge signed a declaration, stating that after petitioner stumbled away from his fight with the victim, a group of approximately twelve people gathered near the victim, and three people inside a fenced area kicked the victim, who was still alive. Coppedge Decl. ¶¶ 3-4, 6. According to Coppedge, petitioner was not one of these three men who kicked the victim and then pushed him down into the creek. *Id.* at ¶¶ 5-6. Coppedge states that he had been taken to the police station, questioned by police, arrested for threatening a witness, and told by police officers that he fit the description of one of the people who killed the victim. *Id.* at ¶ 9. He explains that he did not tell the truth in the police interviews because "I was scared that I would go to jail, so I told the officers what I thought they wanted to hear." *Id.*

On May 3, 2006, eight years after the crime and five and a half years after the trial, Dyer signed a declaration recanting her earlier statements and stating that after petitioner walked away from his fight with the victim, who was still alive, a group of other men continued to viciously beat the victim and threw him down to the creek. Dyer Decl. ¶¶ 4, 5, 13. Her explanation for why she did not tell the truth earlier is as follows:

> I was interviewed by police detectives who threatened us with prosecutions and charges if we did not cooperate; I told those detectives what I thought they wanted to hear so that I would not be charged with any crimes.

> I did not give the information contained in this statement to the police, because they did not ask me about it.
>
> When I testified for the prosecution in the trial against Rocky Hunt for murder, I was afraid that if I told the truth or said something that conflicted with my prior statements, I would be charged with a crime or otherwise get in trouble with law enforcement.
>
> When I testified for the prosecution in the trial against Rocky Hunt for murder, I was afraid that if I told the truth, I would risk reprisal from law enforcement.

*Id.* at ¶¶ 17-20.

Based on these facts, the court finds that petitioner has not presented "evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error." *Schlup*, 513 U.S. at 316. The court finds that Dyer and Coppedge's declarations are not credible in light of the timing of their submission, their numerous earlier statements, the unpersuasive explanations offered regarding their earlier statements, Robinson's testimony corroborating their earlier statements, and defense counsel's diligent but unfruitful efforts at finding any corroboration for the claim that others were involved. Petitioner has failed to establish that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence. Because petitioner has not shown that "a constitutional violation has probably resulted in the conviction of one who is actually innocent," he has not met the exacting *Schlup* gateway standard. *Id.* at 327.

Petitioner argues that an evidentiary hearing is required before the court may determine whether the new evidence is reliable and meets the *Schlup* gateway standard. However, in *Schlup*, the Supreme Court held that, when faced with a request for an evidentiary hearing based on a claim of actual innocence, "the District Court must assess the probative force of the newly presented evidence in connection with the evidence of guilt adduced at trial." 513 U.S. at 331-32. In other words, rather than automatically granting an evidentiary hearing, the court is to weigh the reliability of the new evidence in light of other evidence and "may consider how the timing of the submission and the likely credibility of the affiants bear on the probable reliability of that evidence." *Id.* at 332. The Supreme Court remanded the case due to "[t]he fact-intensive nature of the inquiry, together with the District Court's ability to take testimony from the few key witnesses *if it deems that course*

*advisable*," *id.* at 332 (emphasis added), further indicating that the district court has discretion in determining whether an evidentiary hearing is required. Likewise, the Supreme Court's statements in *House v. Bell* suggest that a district court need not hold an evidentiary hearing whenever it is faced with a *Schlup* claim of actual innocence. *See House*, 547 U.S. 518, 537 (2006) (declining to elaborate further on the standard set forth in *Schlup* for determining whether to grant an evidentiary hearing because the district court held an evidentiary hearing in this particular case and "because the State does not challenge the court's decision to do so").

### III. ORDER

For the foregoing reasons, petitioner's motion to amend is granted in part and denied in part. Petitioner is granted thirty days leave to file an amended petition asserting claim five to the extent it challenges defense counsel's failure to call Coppedge to testify at trial. Respondent shall have sixty days to respond after the amended petition is filed.

DATED:      6/2/10

*Ronald M Whyte*
RONALD M. WHYTE
United States District Judge

**Notice of this document has been electronically sent to:**

**Counsel for Petitioner:**

Paul Nathan Puri                attorney@paulpuri.com

**Counsel for Respondent:**

Gerald August Engler            Gerald.Engler@doj.ca.gov
Violet May Lee                  violet.lee@doj.ca.gov
Peggy S. Ruffra                 peggy.ruffra@doj.ca.gov

Counsel are responsible for distributing copies of this document to co-counsel that have not registered for e-filing under the court's CM/ECF program.

**Dated:**   6/2/10                                        CCL
                                                **Chambers of Judge Whyte**