**E-FILED on** 11/27/2012

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ROCKY RYAN HUNT,<br><br>    Petitioner,<br><br>  v.<br><br>A.A. LAMARQUE, Warden,<br><br>    Respondent. | No. C-04-03925 RMW<br><br>ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND MOTION FOR EVIDENTIARY HEARING |

Rocky Ryan Hunt ("Hunt") petitions for a writ of habeas corpus under 28 U.S.C. section 2254. The habeas corpus petition asserts that Hunt is held in custody as a result of his conviction of first degree murder in violation of his constitutional rights. For the reasons set forth below, the petition for writ of habeas corpus is denied.

**I. BACKGROUND**

On the evening of May 7, 1998 Hunt, after drinking heavily, got into an altercation with the victim, Frank Paul.[1] Hunt initiated the fight after Paul asked for a cigarette from him and his companion, Trina. Even after Paul fell to the ground, Hunt repeatedly kicked and stamped on his head. Trina attempted to end the fight by telling Hunt that the police were coming but Hunt continued the beating nonetheless. By the time the fight finished, Paul's eyes were shut and there was a pool of blood on the street. Trina later witnessed Hunt and others drag Paul's body to a nearby creek. RT 647-648. Paul was alive when officers recovered him from the creek but died from his injuries shortly thereafter.

At trial, the defense's theory was that Hunt did not have the requisite intent for a first degree murder conviction. After the prosecution's closing argument, defense counsel moved to reopen the evidence to allow for the introduction of newly discovered exculpatory evidence. RT 910. The court held a hearing outside the presence of the jury and made a record as to the defense motion and the court's ruling on it. *Id*. Defense counsel stated that Justin Coppedge ("Coppedge"), a witness to the crime, had just come forward with new testimony that he had seen several people beating Paul.[2] On prior occasions, Coppedge had given a different story to both officers and defense counsel's own investigator. RT 912. Coppedge had also previously been charged with intimidating a witness in the matter. *Id*. Defense counsel argued, "obviously if Justin Coppage [sic] is saying this, there could be some – some alternative defense." RT 912-13. The trial court did not permit the defense to reopen and explained that "this case is two and a half years old. The request to open was in fact untimely and I would not grant it. Also, based on the fact that he had already given three versions to the police and a consistent version to your investigator, the sudden recollection sounds very suspicious." RT 913.

Hunt was convicted of first degree murder and sentenced to 25 years to life.

---

[1] This factual background is substantially derived from the opinion of the California Court of Appeal following Hunt's direct appeal of his conviction. Op. of Cal. Ct. of Appeal, Exh. 3 at 3-5 (Nov. 26, 2002). Facts missing from the appellate decision include citations to the record.

[2] In a declaration later attached to Hunt's appeals, Coppedge fleshes out his proposed testimony. Mot.; Exh. 1. For instance, Coppedge states that Hunt was not present during the second beating committed by others, *id*. at ¶¶ 3-5, and that Paul was still alive at that point. *Id*. Coppedge also claims that he did not come forward with this evidence earlier because he was intimidated by police. *Id*. at ¶ 9.

ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS—No. C-04-03925 RMW
JLC 2

## II. ANALYSIS

### A. Legal Standard

Hunt petitions for habeas relief under the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Under AEDPA, a court may grant a petition for writ of habeas corpus to a person in custody "pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws and treaties of the United States." 28 U.S.C. § 2254(a). Further, the court may only provide the requested relief if the state court's ruling "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

The review of state court decisions is highly deferential, and those decisions should be given the benefit of the doubt. *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002). In the absence of any existing Supreme Court law supporting habeas relief, the claim must be denied. *Carey v. Musladin*, 549 U.S. 70, 77 (2006).

### B. The Trial Court's Refusal To Reopen Trial Proceedings To Allow Hunt To Present Exculpatory Evidence Did Not Violate His Rights To Due Process

Hunt argues that his Sixth Amendment rights to Due Process were violated when the trial court denied his motion to reopen trial upon submission of the Coppedge evidence. Mot. at 9-11. The Court of Appeals rejected Hunt's Due Process claim for procedural reasons and found that "the trial court did not abuse its discretion in denying the motion to reopen."[3] Op. of Cal. Ct. of Appeal, Exh. 5 at 1 (Nov. 26, 2002). In order to succeed on his claim that his Due Process rights were violated and thus to qualify for relief under AEDPA, Hunt must show that the state court decision was "contrary to" or an "unreasonable application of" clearly established federal law. 28 U.S.C. § 2254(d). The court's analysis under the "contrary to" and "unreasonable application of" prongs of § 2254 (d) involves separate standards. *Lockyer v. Andrade*, 538 U.S. 63, 73-75 (2003).

---

[3] According to the appellate court, Hunt's due process claim was partially denied because the claim "could have been, but was not, raised on direct appeal." Op. of Cal. Ct. of Appeal, Exh. 5 at 1 (citing *In re Dixon*, 41 Cal.2d 756, 759 (1953)). Respondent failed to raise a procedural bar argument before this court and so one has not been considered. *See Trest v. Cain*, 522 U.S. 87, 89 (1997).

**1.     Supreme Court Precedent Regarding Due Process Claims Under AEDPA**

In considering Hunt's petition, this court must initially determine the operative Supreme Court precedent. *See Carey*, 549 U.S. at 74-77. Hunt is correct that Supreme Court precedent provides defendants broad license in submitting evidence in support of their defenses. "Whether rooted directly in the Due Process Clause of the Fourteenth Amendment, or in the Compulsory Process or Confrontation clauses of the Sixth Amendment, the Constitution guarantees criminal defendants a 'meaningful opportunity to present a complete defense.'" *Crane v. Kentucky*, 476 U.S. 683, 690 (1986) (citing *California v. Trombetta*, 467 U.S. 479, 485 (1984). However,

> [a] defendant's right to present relevant evidence is not unlimited, but rather is subject to reasonable restrictions. A defendant's interest in presenting such evidence may thus bow to accommodate other legitimate interests in the criminal trial process. As a result, state and federal rulemakers have broad latitude under the Constitution to establish rules excluding evidence from criminal trials. Such rules do not abridge an accused's right to present a defense so long as they are not arbitrary or disproportionate to the purposes they are designed to serve.

*United States v. Scheffer*, 523 U.S. 303, 308 (1998)(internal cites and quotation marks omitted).

The Supreme Court applied the "arbitrary" or "disproportionate" standard in *Washington v. Texas*, 388 U.S. 14, 22-23 (1967) where the Court found that a state rule that barred co-defendants from testifying in favor of each other but did not bar them from being called as witnesses by the prosecution violated the petitioner's Due Process rights. *Id*. Similarly, in *Holmes v. South Carolina,* the Court found a rule unconstitutional that precluded the introduction of evidence showing third-party commission of the crime if the trial judge determined there was strong evidence of the defendant's guilt. 547 U.S. at 329-331. Further, the Court was disturbed by the lack of discretion given to the trial judge, noting that the evidence is excluded even if it "would have great probative value and even if it would not pose an undue risk of harassment, prejudice, or confusion of the issue." *Id*. at 329.

In contrast, the Supreme Court has upheld evidentiary rules which support legitimate government interests. For example, in *Scheffer,* the Court held that a military rule which excluded all polygraph evidence did not violate the rights of the defendant because "it served several legitimate interests" which included supporting the introduction of reliable evidence and leaving credibility determinations to the trier of fact. 523 U.S. at 309. In *Holmes* the Court made clear that

ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS—No. C-04-03925 RMW
JLC                                            4

"the Constitution permits judges to exclude evidence that is repetitive ..., only marginally relevant or poses an undue risk of harassment, prejudice, [or] confusion." (ellipsis and alteration in original) (internal quotations omitted).

### 2. The State Court Opinion Was Not "Contrary To" Clearly Established Supreme Court Precedent

A state court's decision is "contrary to" clearly established federal law if it "applies a rule that contradicts the governing law set forth in [Supreme Court] cases," or if it "confronts a set of facts that are materially indistinguishable from a decision ... and nevertheless arrives at a result different from [Supreme Court] precedent. *Williams v. Taylor*, 529 U.S. 362, 405-406 (2000).

The Ninth Circuit summarized the operative Supreme Court precedent pursuant to a "contrary to" analysis as holding unconstitutional rules which, "by their terms, required the trial court to exclude crucial evidence that has a critical effect on the trial, with little or no justification." *Moses*, 555 F.3d 742, 758 (9th Cir. 2008). Further, the Ninth Circuit directs habeas courts to consider the procedural rule only as to the terms of the rule, unless there is Supreme Court precedent detailing a controlling legal standard as to the admissibility of the allegedly pertinent evidence. *Id*. at 758-759; *Compare with Cudjo v. Ayers*, 698 F.3d 752, 763 (9th Cir. 2012) (granting habeas relief when the facts of petitioner's case were materially indistinguishable from the facts in *Chambers v. Mississippi*, 410 U.S. 284 (1973)).

In the present case, the trial court excluded the Coppedge evidence because to do otherwise would have required reopening the trial after the parties had rested. In denying Hunt's motion to reopen, the trial court acted pursuant to a well-recognized California rule allowing judges broad discretion in considering whether to reopen a criminal case and permit the introduction of new evidence. *See People v. Marshall*, 13 Cal.4th 799, 836 (1996); *People v. Goss*, 7 Cal.App.4th 702, 706 (1992); *People v. Frohner*, 65 Cal.App.3d 94, 110 (1976). The California Penal Code also provides for a change to the normal progression of criminal trials as contained in Penal Code section 1093 for "good reasons, and in the sound discretion of the court." Cal. Pen. Code § 1094. Review of trial court decisions upon motions to reopen is based upon an abuse of discretion standard. *Marshall*, 13 Cal.4th at 836. Generally, reviewing courts look to factors such as "the stage the proceedings have reached when the motion was made, the diligence shown by the moving party in

discovering new evidence, the prospect the jury would accord it undue emphasis, and the significance of the evidence." *Id*.

This court can find no facial reason why this rule which allows the trial court wide discretion in excluding evidence would be so "arbitrary" or "disproportionate to the purposes" it is purported to serve as to violate Hunt's constitutional rights. *Holmes*, 547 U.S. 319, 324. Further, the Supreme Court in *United States v. Bayer*, 331 U.S. 532 (1947) discussed several reasons why allowing courts to refuse to reopen trials in the face of new evidence may support legitimate government interests including preventing prejudice to the government, the threat of the jury placing inflated importance on the new evidence, and judicial economy. *Id*. at 538-39.

Neither party has cited any Supreme Court precedent which "establishes a principle for evaluating discretionary decisions to exclude the kind of evidence here," or to any Supreme Court case with indistinguishable facts from the present one. *Moses*, 555 F.3d at 760. The court cannot consider whether the trial court's discretion was exercised "contrary to" Supreme Court precedent because the Court has not enunciated a "controlling legal standard." *See id*. at 759-60 (citing *Panetti v. Quarterman*, 551 U.S. 930, 953 (2007). The trial court's decision to exclude the proffered Coppedge testimony was not contrary to clearly established Supreme Court law.

### 3. The State Court Opinion Was Not An "Unreasonable Application Of" Clearly Established Supreme Court Precedent

A state court decision is an "unreasonable application of" clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decision but unreasonably applies that principle to the facts of the prisoner's case ... The state court's application of clearly established law must be objectively unreasonable." *Andrade*, 538 U.S. at 75. When the clearly established law is general, state courts have more discretion to reach a decision on a case-by-case determination. *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004). It does not matter that a state court opinion fails to cite Supreme Court cases in making its decision or whether the state court is even aware of the applicable Supreme Court cases so long as "neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002).

Hunt has not shown that there was no reasonable basis for the court's decision not to allow defendant to reopen and present the testimony of Coppedge. Even a strong case for relief does not

ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS—No. C-04-03925 RMW
JLC 6

mean the state court's contrary conclusion was unreasonable. *See Harrington v. Richter*, — U.S.—, —, 131 S.Ct. 770, 786 (2011); *Andrade*, 538 U.S. at 75. The law that concerns Due Process violations are broad, and the state court is thus given substantial discretion in determining a procedural issue such as in Hunt's case. Hunt cannot prevail on an "unreasonable application" analysis under section 2254(d)(1).

### C. Hunt's Ineffective Assistance of Counsel Claims

Hunt argues that he was denied effective assistance of counsel relating to his attorney's handling of the Coppedge evidence. To establish a claim of ineffective assistance of counsel, Hunt must demonstrate that his "counsel's representations fell below an objective standard of reasonableness." *Strickland v. Washington*, 466 U.S. 668, 688 (1984). A reviewing court must "indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance" and scrutiny must be highly deferential. *Id.* at 689. Hunt must additionally show prejudice, "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

When a federal court considers a habeas petition, the level of review is doubly deferential. *Harrington*, 131 S.Ct. at 788. Not only must the court's review of counsel's actions be "highly deferential," *Strickland*, 466 U.S. at 689, but the state court's habeas decision can only be reversed if it was an "unreasonable application of" Supreme Court precedent. *Harrington*, 131 S.Ct. at 785.

#### 1. Hunt Was Not Denied Effective Assistance Of Counsel When His Attorney Did Not Request An Evidentiary Hearing Or Present The Coppedge Evidence In A Motion For New Trial

Hunt argues that his trial counsel was ineffective for failing to "place Mr. Coppedge's testimony on the record, so to make a complete record of the scope of the proposed evidence" concerning the motion to reopen. Mot. at 11-13. Further, Hunt argues that his attorney's failure to make a record of the Coppedge testimony or to attach a declaration from Coppedge to his post-trial motion for new trial detrimentally affected the outcome. *Id.* In denying Hunt's claim, the California Court of Appeals found that Hunt "has demonstrated neither that his trial counsel was aware of the evidence in question ... nor that the failure to present the evidence was prejudicial." Op. of Cal. Ct.

ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS—No. C-04-03925 RMW
JLC 7

of Appeal, Exh. 5 at 1-2. It is not clear at what stage of the proceedings the state court was referring in its comment that trial counsel may not have been aware of the evidence.

In any event, Hunt does not provide sufficient evidence to support a claim of ineffective counsel in the face of the state court's decision on this matter. The court notes some discrepancies between the Coppedge declaration which was attached at a later time to Hunt's habeas petitions in the state court proceedings, Mot.; Exh. 1, and counsel's offer of proof made during the motion to reopen. RT at 912-13. For instance, when counsel recited Coppedge's reasoning for changing his statement during the motion hearing, he stated Coppedge experienced "profound lack of memory as to this until some time now." RT 912. However, in his declaration, Coppedge claims he was intimidated by police and therefore told them what they wanted to hear. Mot.; Exh. 1 at ¶ 9. Despite these inconsistencies, there is no indication that the later presented facts would have altered the trial court's reasoning for denying the motion. *See* RT 913.

Defense counsel's failure to include Coppedge's declaration in Hunt's motion for a new trial did not fall outside the range of sound professional judgment. Although counsel made only brief comment about the trial's court's denial of his motion to reopen in his argument for a new trial, the decision may have been a tactical one. The judge was familiar with the circumstances under which Coppedge's proposed testimony came about, and counsel may have felt that emphasizing the issue about the refusal to allow reopening may have weakened other stronger arguments for a new trial. *See Knowles v. Mirzayance*, 556 U.S. 111, 125, 127 (2009) (counsel's abandoning a weak defense may be reasonable, even if there is nothing to lose by preserving the defense). Counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *See Strickland*, 466 U.S. at 690.

### 2. Hunt Was Not Denied Effective Assistance Of Counsel When He Failed to Call Coppedge To Testify At Trial.

Hunt finally contends that his trial counsel was ineffective for failing to personally interview Coppedge and for failing to call Coppedge to testify. Motion at 14-18. Hunt specifically argues that had Coppedge been called, he could have provided evidence that individuals other than Hunt were responsible for the victim's death. *Id*.

ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS—No. C-04-03925 RMW
JLC                                                                                                                   8

Hunt concedes that there is no requirement from either the Supreme Court or from the Ninth Circuit that counsel interview every potential witness. *See LaGrand v. Stewart*, 133 F.3d 1253, 1274 (9th Cir. 1998). Hunt instead relies principally on three Ninth Circuit cases where ineffective assistance was shown to support his contention that his trial counsel was ineffective in both failing to personally speak with Coppedge prior to trial and for his decision not to call Coppedge at trial. All three are distinguishable from the present facts. In *Riley v. Payne*, 352 F.3d 1313 (9th Cir. 2002), defense counsel never contacted an exculpatory witness. *Id*. at 1318. Similarly, in *Lord v. Wood*, 184 F.3d 1083 (9th Cir. 1999) and *Alcala v. Woodford*, 334 F.3d 862 (9th Cir. 2003), defense counsel knew that the testimony of certain witnesses would be exculpatory but failed to present the evidence at trial. *Lord*, 184 F.3d at 1088; *Alcala*, 334 F.3d at 870-871. Here, counsel specifically explained to the trial court that his investigator had interviewed Coppedge prior to trial and, at that time, Coppedge reaffirmed his prior statements which were not particularly helpful to the defense. RT 912. Therefore, counsel had no reason to believe that Coppedge would be a favorable witness until just prior to bringing his motion to reopen.

### 3. Hunt Was Not Prejudiced By Any Alleged Ineffective Assistance Of Counsel

Even if the failure to call Coppedge were considered to represent deficient performance by counsel, Hunt has not shown that he was prejudiced. Hunt must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different; a reasonable probability is a probability sufficient to undermine confidence in the outcome. *Strickland*, 466 U.S. at 694. As noted by the trial judge, Coppedge's proposed testimony was suspect in that he had given inconsistent prior statements to both the prosecution and defense. Further, his proposed testimony did not dispute that Hunt severely beat Paul—the most his testimony would have shown is that others may have also participated in beating Paul to death. It is highly unlikely that Coppedge's testimony would have affected the verdict.

### D. Hunt Is Not Entitled To An Evidentiary Hearing

Hunt finally argues that he is entitled an evidentiary hearing to present testimony regarding the Coppedge evidence and his ineffective assistance claim. Dkt. No. 86 at 2. Specifically, Hunt asserts that his trial attorney will testify that he was "more concerned with defending his

ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS—No. C-04-03925 RMW
JLC 9

performance than with convincing the trial court to allow Coppedge's testimony." *Id*. With the exception of the Coppedge declaration, Hunt provides no declaration or written proffer of the testimony he wishes to submit.

Though Hunt claims that he requested an evidentiary hearing to present all his proffered testimony while his petition was in the state courts, this court is unable to find any evidence of such requests in the record. Hunt has not provided evidence of what he could have presented that was significantly different from that which the trial court had been made aware. Further, under AEDPA, a court may hold an evidentiary hearing only in certain circumstances, among them if the claim relies on "a factual predicate that could not have been previously discovered through the exercise of due diligence." 28 U.S.C. § 2254(e)(2). Notably, Hunt does not give any explanation of how he meets this requirement. Hunt's request for an evidentiary hearing is denied.

### III. CERTIFICATE OF APPEALABILITY

The federal rules governing habeas cases brought by state prisoners require a district court that denies a habeas petition to grant or deny a certificate of appealability ("COA") in its ruling. *See* Rule 11(a), Rules Governing § 2254 Cases, 28 U.S.C. § 2254 (effective December 1, 2009). For the reasons set out in the discussion above, petitioner has not shown "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right [or] that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Accordingly, a COA is denied.

### IV. ORDER

For the foregoing reasons, the petition for writ of habeas corpus is denied, and a certificate of appealability will not be issued.

DATED: November 27, 2012

*Ronald M. Whyte*
RONALD M. WHYTE
United States District Judge

ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS—No. C-04-03925 RMW
JLC                                                                 10